**Haan v. Wells**

*John J. Brier* and *Brigid E. Carey*, for plaintiffs
*J. Brian Foley*, for defendant

NEALON, *J.*, June 19, 2013—Plaintiffs D. Scott Haan and Patrice Amity Haan ("the Haans") instituted this ejectment and trespass action against defendants John A. Wells, John A. Wells, Jr. and William Wells ("the Wells") on November 9, 2011, seeking to eject them from a parcel of land situated in Newton Township, Lackawanna County, and to enjoin any further unprivileged entry upon that land. (Docket entry no. 1). On February 2, 2012, the Wells filed an answer to the complaint, and under the heading "new matter" asserted that the Haans had improperly "erected a gate barring passage over a well established easement" to their land, as per the attached survey prepared by John Michael Hennemuth. (Docket entry no. 3 at ¶¶13-20, exhibit 1). The Haans filed a timely "reply to new matter" on February 21, 2012. (*Id.* at no. 4).

On November 15, 2012, the Haans filed a certificate of readiness, and a status conference was conducted before the undersigned on December 19, 2012. (*Id.* at no. 10). An order was issued on that date scheduling this matter for a non-jury trial beginning on January 7, 2013. (*Id.* at no. 11). During the first day of trial, testimony was received from Daniel L. Penetar, Jr., Esquire, Holly Norton, George Dunda, D. Scott Haan, John A. Wells, Jr., and William Wells. At the request of the Wells, their registered surveyor,

John M. Hennemuth, was afforded thirty (30) days within which to produce a supplemental report in response to a revised survey that was prepared by the Haans' surveyor, George J. Dunda, in December 2012. (*Id.* at no. 13).

After Mr. Hennemuth prepared and distributed his supplemental report, the bench trial resumed on February 27, 2013, at which time testimony was received from Mr. Hennemuth, Susan Wells and D. Scott Haan (rebuttal). The parties requested, and were granted, leave of court to file proposed findings of fact and conclusions of law within thirty days of the filing of the trial transcript, which was later filed on March 28, 2013. (*Id.* at nos. 14-15). The parties subsequently requested and were granted a thirty day extension of time until May 27, 2013, to file their proposed findings. (*Id.* at no. 16). The parties have now submitted their proposed findings of fact and conclusions of law. (*Id.* at nos. 17-18). The factual findings set forth below are based upon the credible and relevant evidence introduced during the non-jury proceedings on January 7, 2013, and February 27, 2013.

## I. FINDINGS OF FACT

The Haans and the Wells own rural properties in Newton Township which derive from the James Davis Warrant and Stephen King Warrant that established warrant lines in that region more than 200 years ago.[1]

---

1. Warrants such as the James Davis Warrant and the Stephen King Warrant are traceable to land conveyances that were made by William Penn "after his grant from the Crown" prior to the American Revolution. *See Hurst v. Dippo*, 1 U.S. 19, 20, 1 Dall. 22, 23 (Pa. 1774). The Supreme Court of Pennsylvania has stated that "[w]arrent lines were made for the grantees of the state, but they bind not purchasers from the warrantees."

(Transcript of proceedings ("T.P.") on 1/7/13 at pp. 98-99). Due to that area's rugged topography and absence of suitable permanent markers at that time, early surveys for those tracts and warrant lines often lacked precision. (T.P. 2/27/13 at p. 113). As a consequence, the original surveys for the land in question overlap and have created an area of "interference" which, in turn, has given rise to the instant dispute. (*Id.* at pp. 26-27, 34, 37-38, 41-44, 51).

The pertinent chain of title for the Haans' 71 acres and 55 perches of property (the "Catherine Evans tract") is as follows: deed dated October 27, 2011, from Patrice Amity, now Patrice Amity Haan, joined by her husband, D. Scott Haan, as to his marital interest, to Patrice Amity Haan and D. Scott Haan, husband and wife, recorded in the Office of the Recorder of Deeds of Lackawanna County to Instrument No. 201120798; deed dated June 9, 1992, from George H. Evans, Jr., to Patrice Amity, recorded in Lackawanna County Deed Book ("deed book") 1398, at page 781; deed dated January 28, 1982, from George H. Evans, administrator of estate of Catherine P. Evans, to George H. Evans, Jr., recorded in deed book 1046, at pages 479-83; deed dated August 28, 1975, from Catherine Evans to George H. Evans, Jr., recorded in deed book 861, at pages 57; deed dated September 23, 1954, from William E. Kromer to George H. Evans and Catherine P. Evans, recorded in deed book 526, at page 458; deed dated April 12, 1946, from Anthony Szwcak to William E. Kromer, recorded in book 459, at page 244; deed dated December 7, 1918, recorded in deed book 298, at page 35; and deed

---

*Altemose v. Hufsmith*, 45 Pa. 121, 127 (1863).

dated October 16, 1905, from Elizabeth Flynn to Louisa Harris, recorded in deed book 217, at page 311. (Plaintiffs' exhibit nos. 1-5). The relevant conveyances which serve as the basis for the Wells' 212 acres of land, which are comprised of 97.74 acres ("parcel #1") and 116.46 acres ("parcel #2") respectively, are: deed dated July 13, 1992, from John Wells, Jr., Frances Makowski and Donald Wells to John Wells, Jr. and Susan A. Wells, located in deed book 1424, pp. 602-04; deed dated July 13, 1992, from John Wells, Jr., administrator of the estate of Edna Wells to John Wells, Jr., Frances Makowski and Donald Wells, which is located at deed book 1424, pp. 597-600; deed dated December 7, 1988, from Edna Wells to Edna Wells and John Wells, Jr., which is located in deed book 1270, pp. 712-14; deed dated January 17, 1946, from Ella A. Wells to John Wells and Edna Wells, which is located at deed book 456, pp. 351-52; deed dated July 2, 1924, joining parcel #1 with parcel #2, from Andrew Walukus to W.P. Wells which is located in deed book 342, pp. 372-73; and deed dated November 18, 1920, for parcel #1, from Andrew Walukus to Warren P. Wells, which is located in deed book 315, pp. 174-75. (Plaintiffs' exhibit nos. 9-17).

The Haans assert that the Wells have encroached upon a portion of the Catherine Evans tract. (T.P. 1/7/13 at p. 108). The Wells maintain that the Haans have entered parcel #2 without permission, erected a gate on a well-established easement, and posted the trees contained therein. (Docket entry no. 3 at ¶¶13-20; T.P. 1/7/13 at pp. 132, 135-137; defendants' exhibit nos. D2A-G). Defendant John Wells, Jr. pays the real estate taxes on parcel #2 annually, (T.P.

1/7/13 at p. 131), and the Wells have utilized parcel #2 for a number of recreational activities, including hunting, riding ATVs and picking berries. (*Id.* at pp. 132, 159-160). In rebuttal to the Wells' claim, plaintiff D. Scott Haan testified that the Haans acquired an unidentified portion of parcel #2 through a tax sale and subsequent quiet title action. (T.P. 1/7/13 at p. 118, 123-124).

The resolution of the parties' claims hinges primarily upon the surveys that were conducted of the land at issue. The most senior survey identified in this matter was a survey that was conducted by Hollis Dunning ("Dunning") in 1953. (T.P. 1/7/13 at p. 92; defendants' exhibit no. 3). Dunning conducted this survey on behalf of the American Telephone & Telegraph Co. ("AT&T"). (*Id.*). Among his findings, Dunning identified the ownership rights of John A. Wells in the James Davis Warrant. (*Id.*).

The Haans had their property surveyed by George Dunda ("Dunda") in 1989 and 1992. (T.P. 1/7/13, at pp. 69-70, 73, 100; plaintiffs' exhibit nos. 6 & 19). According to Dunda's 1989 survey, the Haans are owners of a parcel, which includes the Catherine Evans tract, that consists of the following dimensions: beginning at the northern boundary on the S45°56'00" E line, the Haans' boundary line moves along S45°56'00"E in a southern direction for 1340.49 ft and ends at S46°10'00"W. The boundary line then moves in a southwestern direction along S46°10'00"W for 1335.14 ft, which ends at the S67°58'00"E line. The boundary line then moves east along S67 °s 58'00"E for 229.39 ft, which ends at S43°53'00"W. The S43°53'00"W boundary line proceeds

southwest for 1383.81 ft where it meets N45°03'56"W. The boundary line then follows the N46°03'56" line for 2468.22 ft in a southeasterly direction where it meets a stone wall at N43°35'00"E. The Haans' boundary line follows N43°35'00"E for 1219.72 ft where it meets S61°57'00"E. The Haans' boundary line then runs on S61°57'00"E for 2561.67 ft, which ends when it intersects with S43°36'00"W. The boundary line then moves in a southwesterly direction along S43°36'00"W for 1307.17 ft. The boundary line then moves in a northwesterly direction along the N62°20'08"W for 1139.08 ft. The line then turns in a northeastern direction along S40°00'00"W for 3166.02 ft where it then meets Timber Lane/T-378. The boundary line then continues along the S40°00'00"W from Timber Lane/T-378 for 3074.33 ft, which returns to the starting line of S45°56'00"E. (Plaintiffs' exhibit no. 19).

Dunda also prepared a survey dated December 14, 2012, that likewise identifies the Haans' alleged ownership rights in the area in question. (Plaintiffs' exhibit no. 6). In addition, Dunda's 2012 survey identifies the two areas that the Haans contend that the Wells encroached and trespassed upon, namely a 23.41 acre area ("encroachment area #1") and a 5.18 acre area ("encroachment area #2"), respectively. (*Id.*).

The Wells had their relevant property surveyed by John Hennemuth ("Hennemuth"). (T.P. 2/27/13, at p. 14; plaintiffs' exhibit no. 18). Hennemuth's survey was originally dated May 29, 2009, but was revised on September 22, 2009, and November 4, 2010. (Plaintiffs'

exhibit nos. 18 & 24). According to Hennemuth's survey, the Wells own parcel #1 and parcel #2, which are identified as such on plaintiffs' exhibit nos. 18 and 24. (*Id.*).

## II. DISCUSSION

### (A) HAANS' EJECTMENT ACTION

In count I of their complaint, the Haans assert a cause of action in ejectment relative to two parcels of land, to wit, a 23.41 acre area ("encroachment area #1") and a 5.1 acre area ("encroachment area #2"). (Docket entry no. 1 at ¶¶1-8). Encroachment area #1 and encroachment area #2 are both identified as the "cross-hatched" areas on plaintiffs' exhibit no. 6. (Plaintiffs' exhibit no. 6).

Plaintiffs in an ejectment action bear the burden of proving, by a preponderance of the evidence, their right to immediate exclusive possession of the property, and such "[r]ecovery can be had only on the strength of their own title, not the weakness of defendant's title." *Riverwatch Condominium Owners Association v. Restoration Development Corporation*, 980 A.2d 674, 681-682 (Pa. Cmwlth. 2009), *app. denied*, 603 Pa. 711, 985 A.2d 220 (2009). "Ejectment is an action filed by a plaintiff who does not possess the land but has the right to possess it, against a defendant who has actual possession." *Wells Fargo Bank v. Long*, 934 A.2d 76, 78 (Pa. Super. 2007); *Durdach v. Revta*, 2011 WL 7272290, at * 3 (Lacka. Co.2011), *aff'd*, 64 A.3d 268 (Pa. Super. 2013). It is firmly established in Pennsylvania that an ejectment action "cannot be maintained by the plaintiff unless [s]he is out of possession, and [s]he has a right to the possession of the

property at the time of the commencement of the action." *Wells Fargo Bank*, 934 A.2d at 79.

The Haans did not establish by a preponderance of the evidence that they are "out of possession" of encroachment area #1 or encroachment area #2. At most, the Haans presented evidence indicating that members of the Wells family have temporarily entered or encroached upon those two areas. (T.P. 1/7/13 at pp. 107-109, 123-125). Absent sufficient proof that a party other than the Haans was in "possession" of encroachment area #1 and encroachment area #2 at the time that the Haans filed this suit on November 9, 2011, there is no factual or legal basis for finding in their favor on their ejectment claim. Consequently, a verdict will be entered in favor of the Wells and against the Haans with respect to count I of the complaint.

### (B) HAANS' TRESPASS CLAIM

The Haans alternatively advance a trespass claim in count II of the complaint. One who intentionally enters the property of another without the privilege to do so is chargeable with trespass. *Kopka v. Bell Telephone Company of Pennsylvania*, 371 Pa. 444, 450, 91 A.2d 232, 235 (1952); *Woodham v. Dubas*, 256 Fed. Appx. 571, 576 (3d Cir. 2007). Pennsylvania has adopted the Restatement (Second) of Torts §158 which imposes liability for trespass if the intruder enters or remains on the land of another without consent. *Rawlings v. Bucks County Water Sewer Authority*, 702 A.2d 583, 586 (Pa. Cmwlth. 1997). It is immaterial whether the trespass is committed willfully

and with the intent to invade another's interest, and a defendant is liable for trespass which is the product of an innocent mistake based upon the trespasser's honest or reasonable belief that the property in question is his/her own. *Kopka, supra.*

To succeed with a trespass claim, "there must be in the plaintiff either actual possession or the right to immediate possession flowing from the right of property; and [s]he must have been deprived of it by the tortious act of another." *Florig v. Estate of O'Hara*, 912 A.2d 318, 327 n.13 (Pa. Super. 2006), *app. denied*, 593 Pa. 740, 929 A.2d 1162 (2007). A party is deemed to be in "possession" of land if [s]he, *inter alia*, "is in occupancy of land with intent to control it." *Cassel-Hess v. Hoffer*, 44 A.3d 80, 88 n.6 (Pa. Super. 2012) (quoting Restatement (Second) of Torts §157). If the property at issue is "unimproved and unoccupied in any way, the title carrie[s] with it the possession and such possession [i]s sufficient to support an action of trespass." *Roncace v. Welsh*, 141 Pa. Super. 170, 173, 14 A.2d 616, 618 (1940).

The credible evidence established that encroachment areas #1 and #2 constitute uncultivated, unimproved and unoccupied land, (Plaintiffs' exhibit no.7), as a result of which the Haans must establish their ownership of that property to establish their possession. The surveys and testimony presented by George Dunda adequately establish the Haans' title and ownership of encroachment areas #1 and #2. (*See* plaintiffs' exhibit nos. 2, 3, 6, 19). In fact, even John Wells, Jr. acknowledged during his testimony that "I didn't claim I own [the Catherine Evans

parcel]." (T.P. 1/7/13 at p. 145). Therefore, the Haans have satisfied the possession element of their cause of action for trespass.

The credible testimony demonstrated, by a preponderance of the evidence, that the Wells have entered encroachment areas #1 and #2, albeit based upon the mistaken belief that the land was not owned by the Haans. The evidence further established that the Wells have intentionally entered that land without the privilege to do so. (*See* plaintiffs' exhibit nos. 2, 3, 6, 19; T.P. 1/7/13 at p. 145). By virtue of the Wells' unprivileged and intentional intrusion upon encroachment areas #1 and #2, they are liable to the Haans for trespass and will be enjoined from any further unauthorized entry upon that property.

## (C) WELLS' TRESPASS CLAIM

In their new matter, the Wells request a judicial determination that the Haans have entered the Wells' land without permission, erected a gate barring passage over a "well-established easement," and improperly "posted" the property with signs. (Docket entry no. 3 at ¶¶13-20). Since the Wells seek affirmative relief, their claim should have been asserted as a counterclaim under Pa.R.C.P. 1031, rather than as new matter pursuant to Pa.R.C.P. 1030. However, some decisional authority recognizes that the mislabeling of a counterclaim as new matter should not be regarded as a fatal procedural defect. *See, e.g., Reeping v. Reeping*, 277 Pa. Super. 269, 271, 419 A.2d 766, 767 (1980) ("Despite the mislabeling of this claim as new matter, we will treat it as a counterclaim."). Indeed, during

the bench trial, even counsel for the Haans represented that "[t]here is a counterclaim." (T.P. 1/7/13 at p. 116). Inasmuch as the Haans and their counsel proceeded at trial based upon the understanding that the Wells had properly asserted a counterclaim, the mislabeling of that claim as new matter will be treated as a *de minimus* defect, *see Horick v. Laird*, 58 D. & C.2d 141, 142 (York Co. 1971), and the merits of that claim will be addressed.

Not unlike the Haans, the Wells must produce sufficient evidence of their ownership of the disputed land, i.e., parcel #2. The Wells presented credible testimony and documentary proof by John R. Hennemuth establishing the Wells' ownership of parcel #2. Based upon his survey of the Wells' property, his interpretation of the deeds, the tax assessment made by the local taxing authority, and the Wells' payment of property taxes, Mr. Hennemuth convincingly opined that the second deed to the Wells conveyed the remainder of the James Davis Warrant to the Wells. (T.P. 2/27/13 at pp. 94-96; plaintiffs' exhibit nos. 18, 24).

In addition, John Wells, Jr. credibly testified that he pays the real estate taxes on parcel #2 on an annual basis, and his family utilizes that land for recreational activities. (T.P. 1/7/13 at pp. 131-132, 159-160). Perhaps most importantly, the Dunning survey that was prepared for AT&T on December 1, 1953, clearly identifies the Wells as the owners of the portion of parcel #2 which is at issue. (Defendants' exhibit no. 3).

Although the Haans asserted during the non-jury trial

that they acquired a portion of parcel #2 via a tax sale and subsequent quiet title action, (T.P. 1/7/13 at pp. 118, 123-124), the record is devoid of the requisite proof of that purported acquisition. No exhibits were admitted into evidence establishing the details of that alleged tax sale or the scope of the quiet title action. Hence, the Haans have failed to produce sufficient evidence of their ownership or right to possession of any part of parcel #2. Based upon the record submitted for review, the Haans' claims relative to parcel #2 must fail. *See Fried v. Sulewski*, 25 Pa. D. & C. 3d 580, 586-587 (Luz. Co. 1982).

The credible evidence has established the Wells' ownership and right to immediate possession of the relevant portion of parcel #2. It is undisputed that the Haans have entered that land without the Wells' consent, and have erected a gate and posted signs on that property. (T.P. 1/7/13 at pp. 132, 135-137). As a result, the Wells have proven that the Haans have entered the Wells' property without privilege and are, therefore, liable for trespass. Accordingly, the Haans will be directed to immediately remove the gate in question, which is identified in defendants' exhibit nos. D-2E and D-2F, as well all signs which have been posted on said property by the Haans.

### ORDER

And now, this 19th day of June, 2013, upon consideration of the competent, credible and relevant evidence introduced during the non-jury proceedings on January 7, 2013, and February 27, 2013, and the parties' supplemental submissions filed on May 27, 2013, and

based upon the findings of fact and conclusions of law set forth in sections I and II above, it is hereby ordered and decreed that:

1. A non-jury verdict is entered in favor of defendants and against plaintiffs as to plaintiffs' ejectment claim set forth in count I of the complaint;

2. A non-jury verdict is entered in favor of plaintiffs and against defendants on plaintiffs' claim for trespass set forth in count II of the complaint;

3. Defendants John A. Wells, John Wells, Jr., and William Wells are enjoined from any further entry or encroachment upon the 23.41 acre area and the 5.18 acre area identified as the "cross-hatched" areas on the plaintiffs' exhibit no. 6;

4. A non-jury verdict is entered in favor of defendants and against plaintiffs on defendants' new matter/ counterclaim for trespass, and plaintiffs are directed to immediately remove the gate and signs which they erected on parcel No.2